IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SAMUEL WINTERS,            )
                           )
            Plaintiff,     )
                           )
      v.                   )   No. 03 C 9131
                           )
WALSH CONSTRUCTION OF ILLINOIS, )
                           )
            Defendant.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Samuel Winters was formerly employed by Walsh/II in One Joint Venture (the "Joint Venture"). Defendant Walsh Construction Company of Illinois ("Walsh Construction") is a member--apparently the lead member--of the Joint Venture.[1] In 2001, plaintiff complained about discrimination at his workplace. While before the EEOC, the parties entered into a "mediation settlement agreement" resolving the claim.[2] Thereafter, plaintiff was reinstated. In 2002, plaintiff complained about

---

[1] The Joint Venture is not named as a defendant in this case. While Walsh Construction suggests in its brief that it is not the proper party to name as defendant, it does not raise that as a ground for dismissal. For present purposes, it is unnecessary to determine whether defendant Walsh Construction should be considered an employer of plaintiff. It will be assumed that defendant was plaintiff's employer both in 2001 and 2002.

[2] Walsh Construction, not the Joint Venture, is a party to the settlement.

alleged racially derogatory comments by a co-worker. The next day, plaintiff was laid off. In Count I of his First Amended Complaint, plaintiff alleges that the termination of his employment was retaliation for the prior complaint of discrimination and for the 2002 complaint about the co-worker. Count I is pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Count II is a breach of contract claim based on the 2002 events being violations of a provision of the settlement that defendant would not engage in any further discrimination or retaliation.[3] Defendant has moved for summary judgment as to both counts.

In accordance with Local Rule 56.1(a)(3), defendant filed its statement of material facts. Plaintiff, who is represented by counsel, did not file a paragraph-by-paragraph response to that statement as is required by Local Rule 56.1(b)(3). In his answer brief, though, plaintiff cites to deposition testimony that he contends raises two factual issues. It is within the court's discretion as to how strictly to enforce Local Rule 56.1. See Bordelon v. Chicago School Reform Board of Trustees, 233 F.3d

---

[3] It has generally been held that there is federal question jurisdiction for this type of claim. See De La Cruz v. McEntee, 2002 WL 122936 *3-4 (S.D.N.Y. Jan. 29, 2002) (collecting cases). Even if this claim should instead be characterized as a supplemental state law claim, the court would exercise its discretion to resolve the merits of the summary judgment motion as to Count II even with the Count I federal question claim being dismissed on summary judgment. The two claims are closely related and the grounds for dismissal are overlapping.

524, 527 (7th Cir. 2000); <u>Best Vacuum, Inc. v. Ian Design, Inc.</u>, 2006 WL 3486879 *2-3 (N.D. Ill. Nov. 29, 2006); <u>Perry v. Bodman</u>, 2006 WL 1460003 *2 (N.D. Ill. May 23, 2006). Since plaintiff did not file a Local Rule 56.1(b)(3) statement, all the facts asserted in defendant's statement could be deemed to be true. <u>See</u> N.D. Ill. Loc. R. 56.1(b)(3)(C). The court, however, will consider the citations and factual assertions contained in plaintiff's brief. Unless a fact is controverted by the evidence cited in plaintiff's brief, all facts contained in defendant's statement of facts will be assumed to be true.

Defendant contends both counts fail because the evidence does not support that it committed any discrimination or retaliation. Defendant also contends that Count I[4] is untimely because not raised before the EEOC and not timely included in the original <u>pro se</u> complaint filed in this case.[5] Since Count I is subject to dismissal on its merits, the timeliness issue will not be addressed.

The facts taken as true for purposes of summary judgment

---

[4]Defendant does not specifically state that this argument is limited to Count I, but the timeliness issues raised would not apply to the breach of contract claim.

[5]Plaintiff disputes this contention, arguing that his <u>pro se</u> EEOC charge and <u>pro se</u> complaint should be read as raising the retaliation claim that is more clearly delineated in the attorney-drafted First Amended Complaint. Plaintiff does not expressly raise any argument based on the amendment relating back to the date of the original complaint. <u>See</u> Fed. R. Civ. P. 15(a)(2).

are as follows. Plaintiff is a Black male. As of 2001, plaintiff was employed by defendant as a construction laborer doing landscape work at Millennium Park in Chicago, Illinois. In September 2001, plaintiff filed an administrative charge alleging that Walsh Construction committed race discrimination and retaliation by failing to prevent racial harassment in the form of being taunted with racially discriminatory remarks by a "Foreman/Carpenter." Under the auspices of the EEOC, Winters and Walsh Construction entered into a "mediation settlement agreement" dated November 7, 2001. The mediation agreement provides that it may be enforced in court by either the EEOC or the parties. Under the terms of the mediation agreement, plaintiff agreed to request closure of his EEOC charge and not to pursue a lawsuit based on that charge. Defendant agreed to pay a monetary sum to plaintiff and to reinstate him as of November 12, 2001[6] or such time as he met the qualifications to be a laborer. Paragraph 4 of the mediation agreement provides: "[Walsh Construction] agrees that there shall be no discrimination or retaliation of any kind against [Winters] as a result of filing this charge or against any person because of opposition to any practice deemed illegal under the ADA, the ADEA or Title VII, as a result of filing this charge, or for giving testimony,

---

[6]Although not expressly stated in defendant's statement of facts, documents provided in support of the statement indicate that plaintiff stopped working for defendant in September 2001.

assistance or participating in any manner in an investigation, proceeding or a hearing under the aforementioned Acts." On the same date, the parties also entered into a "confidential settlement agreement and mutual release" that contains some additional provisions.

As of November 2001, plaintiff was physically unable to work. In April 2002, plaintiff's physician cleared him to return to work. On April 16, 2002, plaintiff again began work on the Millennium Park project. On May 13, 2002, an operator named "Stan," who is also Black, became angry with plaintiff because equipment being used by plaintiff was blocking the loader being driven by Stan. Stan said to plaintiff, "You stupid motherfucker, move this, you dumb bitch, you black motherfucker" and "You stupid, ignorant motherfucker." In addition to the fact that Stan used the word "black," plaintiff considered this to be a racial insult because Stan repeatedly called plaintiff "you" instead of using plaintiff's name. This was the only incident plaintiff had with anyone on the job during this stint of employment.

The day of the incident with Stan, plaintiff reported it to a Superintendent on the project. The next day, plaintiff was laid off.

Project Manager Chris Everett was responsible for determining how many laborers to employ for the Millennium Park

project. From April through June 2002, 27 different laborers worked on the project: 12 Hispanics, 9 Whites, and 6 Blacks. As of mid-May 2002, defendant's Millennium Park work was winding down. Everett, in consultation with his Project Superintendents, determined reductions in staffing for the project. On May 14, 2002, plaintiff was laid off from the project. During the week of May 13 through 19, six other laborers were also laid off: 3 Hispanics and 3 Whites.[7] The undisputed evidence is that Everett made the decision as to which employees to lay off.

Defendant has presented evidence of a legitimate, nondiscriminatory ground for discharging plaintiff. Therefore, plaintiff must either present direct evidence of a retaliatory motive or show that the stated ground is pretextual. See generally Kodl v. Board of Education School District 45, Villa Park, 490 F.3d 558, 562 (7th Cir. 2007); Volovsek v. Wisconsin Department of Agriculture, Trade & Consumer Protection, 344 F.3d 680, 692 (7th Cir. 2003). Plaintiff contends a retaliatory motive

---

[7] In his brief, plaintiff disputes that others were laid off the same day as he was. Plaintiff cites to his own deposition in which he states that he does not "know of" any other layoffs that day. Pl. Dep. at 63. That is not a statement that no other layoffs occurred that day. Even if plaintiff made such a statement, it would likely be hearsay since he would not likely have personal knowledge of who was laid off. Moreover, plaintiff also testifies that he was aware others were laid off the same week as he was. Id. Defendant's evidence is that one other laborer was laid off the same day as plaintiff and 5 more were laid off that week.

can be inferred by the fact that he was laid off the day after he complained about Stan's statement. However, "suspicious timing alone rarely is sufficient to create a triable issue." Cassimy v. Board of Education of Rockford Public Schools, District #205, 461 F.3d 932, 938 (7th Cir. 2006) (quoting Moser v. Indiana Department of Corrections, 406 F.3d 895, 905 (7th Cir. 2005)). But even if this were ordinarily a basis for drawing such an inference, it would not be in the present case. Plaintiff provides no evidence that Everett was aware plaintiff had made the complaint. Therefore, there is no basis for inferring that plaintiff was discharged because of a retaliatory motive. Count I will be dismissed.

The alleged breach of the mediation settlement is that defendant engaged in retaliation. Since plaintiff has not shown that retaliation occurred, he cannot show that there was a breach.

Plaintiff also alleges that defendant breached its promise that plaintiff would not be subjected to discrimination. Plaintiff contends that the racial slurs of Stan are discrimination. This allegation fails for two reasons. The mediation agreement does not contain a promise of no discrimination. It contains a promise that "there shall be no discrimination . . . of any kind against [Winters] as a result of filing this charge or against any person because of opposition to any practice deemed illegal under the ADA, the ADEA or Title VII,

as a result of filing this charge, or for giving testimony, assistance or participating in any manner in an investigation, proceeding or a hearing under the aforementioned Acts." That is a promise not to discriminate against plaintiff for engaging in protected activity--in other words, a promise not to retaliate--not a promise that plaintiff would not be subject to racial discrimination. Even if the agreement could be read as promising no racial discrimination, being subjected to a single incident of racial slurs from a co-worker does not constitute racial discrimination. See Mateu-Anderegg v. School District of Whitefish Bay, 304 F.3d 618, 626 (7th Cir. 2002). Count II will also be dismissed.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [47] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER 20, 2007